[i JONES, Judge.
Defendant/Appellant, the City of New Orleans (hereinafter “City”), appeals the judgment of the district court which upheld the constitutionality of LSA-R.S. 44:3(F), which allows family members of a murder victim to discover all records of a governmental agency relevant to the investigation of the death of the victim, after the passage of ten years after the crime. After reviewing the record, we find that the legislation at issue is not special legislation; thus, we affirm the judgment of the district court.
FACTS AND PROCEDURAL HISTORY
Israel Trestman was murdered on April 24, 1989, in New Orleans, Louisiana. An extensive investigation relative to the murder of Mr. Trestman was conducted, but the New Orleans Police Department (hereinafter “NOPD”) was unable to arrest a suspect in connection with its investigation of this crime. Therefore, on February 10, 2000, Mr. Trestman’s son, Evan, along with Mr. Trestman’s widow, Roslyn Trest-man, filed an application in the Orleans Parish Criminal District Court to obtain the records, files, and evidence pertaining to the investigation of Mr. Trestman’s death. The application was filed pursuant to LSAjR.S.2 44:3 A(l) as amended and reenacted, and 44:3(F) as amended by Act 484 of the Regular Session of the 1999 Legislature.
Though the Trestmans’ application was initially granted, the district court, on May 5, 2000, vacated its order, stayed the enforcement of its order, and set the matter for a contradictory hearing in light of the City’s Motion to Dismiss or Quash the *400 Application. Following oral arguments, the district court affirmed its original judgment by finding that the statute was constitutional and that the Trestmans were entitled to discover the records relative to the NOPD’s investigation of Israel Trest-man’s death beginning on May 15, 2000. It is from this judgment that the City filed the instant suspensive appeal.

a. Statutory Intent

In its pleadings and arguments before this Court, the City argues that the statute in question is an unconstitutional infringement upon the City’s police powers as it pertains to the facts and circumstances of the instant case. In essence, the City asserts that turning over the files to the victim’s immediate family members would drastically jeopardize the City’s ability to adequately prosecute the case. The City also contends that compliance with the statute could place the Trestmans in grave danger of physical harm. For instance, the City contends that the Trestmans could be harmed if they relinquished information to someone who may actually be a suspect in the case or if they confronted an individual who they believed murdered their loved one. More specifically, the City argues that the crime of first degree murder has no statute of limitations; therefore, the City still has the obligation and authority to continue to prosecute this crime without surrendering the fruits of its investigation.
laThe City argues that allowing the Trestmans to review the records when the case is not officially closed would only delay and further interfere with the prosecution of the case. Moreover, the City argues that presenting testimony regarding the on-going nature of its investigation would also be a disclosure of its records— especially if these witnesses are to be cross-examined in detail by the Trestmans’ attorneys. The City further argues that the legislature’s passage of the statute does not in and of itself make the statute constitutional because a safeguard was built into the law to require the criminal judge’s approval of the family’s inspection. Finally, the City argues that the statute violates the prohibition against the passage of local or special laws, particularly when the statute impacts those civil or criminal actions that are still pending.
In response, the Trestman family argues that the legislature was fully aware of the fact that homicides do not have a prescriptive period, and that they were not looking to prevent the NOPD’s investigation of the case. However, the Trestmans argue that, notwithstanding the NOPD’s statutory mandate to investigate crimes within its jurisdiction, the law imposes upon the NOPD the obligation to allow its files to be reviewed by those individuals whose loved one was murdered ten years or longer without a conviction having been effectuated. The Trestmans further argue that the statute’s intent was not to usurp the authority of the police department, but to aid it by allowing members of the statutory class to assist physically and financially in bringing the murderer to justice and providing closure to the affected family. Additionally, the Trestmans dispute the City’s classification of the statute as “special legislation,” because the statute allows any family that meets the statutory prerequisites to discover the police’s documents. We agree.
LSA-R.S. 44:3 provides in pertinent parts the following:
|4A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investiga *401 tors, correctional agencies, communications districts, or intelligence agencies of the state, which records are: (1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled, except as provided in Subsection F of this Section
B. All records, files, documents, and communications, and information contained therein, pertaining to or tending to impart the identity of any confidential source of information of any of the state officers, agencies, or department mentioned in Paragraph A above, shall be privileged, and no court shall order the disclosure of same except on grounds of due process or constitutional law.
[[Image here]]
C. Whenever the same is necessary, judicial determination pertaining to compliance with this section or with constitutional law shall be made after a contradictory hearing provided by law. An appeal by the state or an officer, agency, or department thereof shall be suspensive.
# ífc #
F. Notwithstanding any other provision of law to the contrary, añer a period of ten years has lapsed from the date of death of a person by other than natural causes and upon approval by the district court having jurisdiction over any criminal prosecution which may result due to the death of such person, any prosecutive, investigative, and other law enforcement agency, or any other governmental agency in possession of investigative files or evidence or potential evidence, or any other record, document, or item relating to said death shall, upon request, provide copies of all such files records, and documents to immediate family members of the victim and shall provide unlimited access for any and all purposes to all such evidence, potential evidence, and other items to any member of the immediate family and to any person or persons whom any member of the immediate family has designated for such purpose. The | .^access granted shall include but not be limited to the examination, inspection, photographing, copying testing, making impressions, and the use in any court proceeding of and conducting forensic studies on such evidence, potential evidence, and other items. For the purposes of this Subsection, the term “immediate family” shall mean the surviving spouse, children, grandchildren and siblings of the victim.
(Emphasis added). Normally, the records of a law enforcement agency that pertain to pending criminal litigation are not discoverable or subject to inspection by the public under the Public Records Act [1], unless, a court of competent jurisdiction determines that such discovery or inspection is mandated. See LSA-R.S. 44:1 et seq.; State v. Lutcher, 96 2378 (La.App. 1 Cir. 9/19/97), 700 So.2d 961. See also Loewenwarter v. Morris, 420 So.2d 550 (La.App. 4 Cir.1982). Nevertheless, the determination of whether a specific record is a ree- *402 ord pertaining to pending criminal litigation, and is thus exempt from disclosure, must be made on a case-by-case basis and is subject to judicial review. Johnson v. Stalder, 97-0584 (La.App. 1 Cir. 12/22/98), 754 So.2d 246; see generally, Elliott v. Taylor, 614 So.2d 126 (La.App. 4 Cir.1993). However, LSA-R.S. 44:3 granted the immediate family members of a murder victim whose death occurred ten years ago access to “any prosecutive, investigative, and other law enforcement agency, or any other governmental agency in possession of investigative files or evidence or potential evidence, or any other record, document, or item relating to said death”. LSA-R.S. 44:3(F). It was undisputed at the hearing that over ten years has elapsed since the murder of Israel Trest-man. Additionally, the Trestmans were the proper parties to institute this action since they satisfied the “immediate family” requirement in the [r,statute. Therefore, we find that the district court’s decision to allow the Trestmans to discover the requested documents was not error.

b. Special Legislation

LSA-Const. Art. Ill, sec. 12(A) prohibits the passage of local or special laws. In Kimball v. Allstate Ins. Co., 97-2885, 97-2956, p. 4 (La.4/14/98), 712 So.2d 46, 51 the Louisiana Supreme Court opined that “a statute is special if it affects only a certain number of persons within a class and not all persons possessing the characteristics of the class ... [and it is] directed to secure some private advantage or advancement for the benefit of private persons.” Additionally, a special law is one that confers particular privileges, or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. Local or Special Legislation, 36 La.L.Rev. 549. In other words, if the restrictions can affect only a portion or a fraction of the citizens or property within the created classification, and there is no reasonable basis for the creation of the classification, then the law is unconstitutional. Id. (Emphasis added).
On the other hand, a general law is one that operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides or operates equally upon all of a designated class, which has been founded upon a reasonable classification. Kimball, 712 So.2d at 52. In Kimball, plaintiff sustained injuries in an automobile accident, and brought suit against the other motorist and the City of Baton Rouge. The City of Baton Rouge requested a jury trial pursuant to LSA-R.S. 13:5105, and the plaintiff filed a motion to strike the jury. In granting the motion, the district court found that the statute was 17unconstitutional because it could not be retroactively applied. The appellate court reversed the district court and remanded the matter for a hearing on the constitutionality of the statute.
However, the Supreme Court on review found that the statute was a special law because. it singled out the City of Baton Rouge and the parish of East Baton Rouge to the exclusion of all other political subdivisions which possessed the requisite characteristics of the class. Moreover, the Supreme Court found no apparent justification for the disparate treatment of lawsuits in which the City of Baton Rouge and the Parish of East Baton Rouge were made defendants.
The real distinction between public or general laws and local or special laws is that the former affect the community as a whole, whether throughout the State or *403 one of its subdivisions; and the latter affect private persons, private property, or private or local interests. Polk v. Edwards, 626 So.2d 1128, 1135 (La.1993), citing State ex rel. Grosch v. New Orleans, 211 La. 241, 29 So.2d 778 (1947). The Supreme Court in Polk further stated that laws pertaining to matters of statewide concern or laws affecting persons throughout the state have been classified as “general” laws. Id.
Here, we find that the amendment to LSA-R.S. 44:3, which allowed a victim’s immediate family members to discover the law enforcement agency’s investigative documents of homicides which occurred ten years ago or longer are indeed of statewide concern and affect more Louisiana citizens than just the Trestmans. The statute does not isolate certain localities or jurisdictions where citizens can evaluate such documents. In fact, this right is extended to every bereaved family that finds itself in this unfortunate position. We find no merit to the City’s argument that there is no reasonable basis for the creation of this statute | Ssince every Louisiana citizen who has been the victim of crime would not be able to enjoy the fruits of this statute. When a Louisiana citizen has lost an immediate family member due to a murder that occurred at least ten years ago, then that citizen may also petition the court to discover and review the law enforcement agency’s investigative records— just like the appellees herein. Accordingly, we find that LSA-R.S. 44:3(F) is a general law which pertains to all citizens that satisfy the above-mentioned prerequisites.
Having found that the legislation at issue is a “general” law, the City’s assignment of error that notice was not given to the City when the Louisiana Legislature introduced Act 484 in the 1999 Legislative Session is moot. Thus, if legislation is general rather than local or special, neither the prohibitions regarding the enumerated subjects nor the requirement for local advertisement apply. See Polk, supra; see also Teachers’ Retirement System, v. Vial, 317 So.2d 179 (La.1975).

DECREE

For the foregoing reasons, we affirm the judgment of the criminal district court.

AFFIRMED.

MURRAY, J., Dissents With Reasons.
WALTZER, J., Concurs With Reasons.

. The purpose of the Public Records Law is intended to enforce [the] public's fundamental, constitutional right to public records in [the] most expansive and unrestricted way possible. Alliance For Affordable Energy v. Frick, 96-1763 p. 4, (La.App. 4 Cir. 5/28/97), 695 So.2d 1126, 1130.